IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CHARLES SULTAN,** | ) | |
| **#A-93755,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17−cv−00418−NJR** |
| | ) | |
| **S. DUNCAN, LT. AUSTIN,** | ) | |
| **C/O KELLER, C/O MAXLEY,** | ) | |
| **R. WEAVER, C/O GIPSON,** | ) | |
| **C/O SELABY, C. JENNING,** | ) | |
| **J. FREEMAN, C/O COOPER,** | ) | |
| **RN POTS, W. BAYLER,** | ) | |
| **B.W. VAUGHN, LT. BYFORD,** | ) | |
| **OFFICER JOHSON, C/O E. CLARY,** | ) | |
| **LT. HARRIS, LT. DALLIS,** | ) | |
| **LT. WHEELER, OFFICER HOUGH,** | ) | |
| **I/A HANCE, I/A MOLENHOUR,** | ) | |
| **LPN WELTY, I/M R. ESTHER,** | ) | |
| **JOHN DOE 1, and JOHN DOE 2,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**Rosenstengel, District Judge:**

This matter is now before the Court for preliminary review of the First Amended Complaint filed by Plaintiff Charles Sultan. (Doc. 11). Plaintiff is currently incarcerated at Western Illinois Correctional Center ("Western Illinois"). He brings this civil rights action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights at Lawrence Correctional Center ("Lawrence") in 2015. *Id*.

In the First Amended Complaint, Plaintiff alleges that officials at Lawrence failed to protect him from an assault by his mentally ill cellmate on September 13, 2015. (Doc. 11, pp. 9-17). He now sues the prison officials for conspiring to violate his rights under the First, Eighth,

and Fourteenth Amendments. (Doc. 11, pp. 18-25, 27-32). He also asserts a claim against them for intentional infliction of emotional distress under Illinois state law. (Doc. 11, p. 26). Plaintiff seeks monetary damages and injunctive relief. (Doc. 11, pp. 33-34).

Plaintiff filed his First Amended Complaint (Doc. 11) before the Court screened the original Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A. An amended complaint supersedes and replaces the original, rendering it void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). As explained below, the amended complaint survives preliminary review under this standard.

## First Amended Complaint

According to the First Amended Complaint, Lawrence officials routinely deny inmates protective custody. (Doc. 11, pp. 9-17). Officials allegedly refuse to grant requests for protective custody until an inmate suffers physical harm or receives a disciplinary ticket. *Id*. Plaintiff claims that officials ignore all requests for protection until they "see blood," and his claims in this case arise from one such incident. *Id*.

On or around July 28, 2015, Officer Johnson informed Plaintiff that he was being released from investigative segregation.[1] (Doc. 11, p. 11). Plaintiff repeatedly refused placement in the general population because he felt that he was in imminent danger of serious physical injury. *Id*. He claims that Orange Crush Tactical Team members planned to hurt him in retaliation for a suit he filed against them. *Id*. Plaintiff was eventually issued disciplinary tickets for each housing refusal. *Id*. He pleaded guilty and was punished with segregation, among other things. *Id*.

Plaintiff was housed in a segregation cell with Inmate Esther, a mentally ill inmate with a known propensity for violence. (Doc. 11, pp. 12-13). Inmate Esther stopped taking his medication. *Id*. He then began using the prison's ventilation system to rap with two other inmates. *Id*. The three inmates screamed loudly back and forth at one another from 3:00 p.m. on September 12th until the evening of September 13th. *Id*. Plaintiff eventually asked Inmate Esther to stop because it was "irritating him" and preventing him from sleeping. *Id*. Inmate Esther became angry with Plaintiff. *Id*.

---

[1] Plaintiff was allegedly placed in segregation by internal affairs officers "pending a test on mail Plaintiff sent to the (A/G) who then sent it off to the (FBI)" on or around July 10, 2015. (Doc. 11, pp. 9-10). Plaintiff includes no claim against the defendants based on this incident. The Court construes the allegations describing it as background information.

Plaintiff asked Officers Johnson, Weaver, Maxley, and Gipson to move him to another cell or get him a crisis team because of "a conflict" with his cellmate. (Doc. 11, p. 12). They refused. *Id*. They also refused Plaintiff's request to speak with a zone lieutenant. *Id*. Nurse Pots likewise refused to call in a crisis team. *Id*.

The same evening, Plaintiff was assaulted by his cellmate. (Doc. 11, p. 11). Inmate Esther allegedly placed a jar of cream into a laundry bag and used it to beat Plaintiff until he lost consciousness. *Id*. As Plaintiff lay on the floor of his cell, Inmate Esther also choked him. (Doc. 11, p. 12). When Plaintiff regained consciousness, Inmate Esther allegedly "pulled out his genital, stating to Plaintiff, 'Now you old ass motherfucker, I am going to make you my Bitch.'" *Id*.

At the time of this incident, Plaintiff had attempted to summon help from officers in the segregation unit by pressing the emergency call button for more than fifteen hours. (Doc. 11, pp. 13-14). Plaintiff alleges that he notified each of the named segregation unit officers that he was in need of protective custody in the two days leading up to the assault. (Doc. 11, p. 14). Officers regularly appeared at his cell, looked for signs of a fight or blood, and then left when they found none. *Id*. Plaintiff's request for a cell transfer was not granted until he was "bleeding from the head." (Doc. 11, pp. 13-14).

Plaintiff asserts that many of these officers were also members of the Orange Crush Tactical Team he had already sued. (Doc. 11, p. 20). According to the allegations, the officers knew exactly what would happen to Plaintiff when they placed him in a cell with Inmate Esther. (Doc. 11, p. 13). The inmate was known to be violent. *Id*. The officers nevertheless forced the two inmates to live together and refused to separate them until Inmate Esther attacked Plaintiff,

in order to retaliate against him for refusing placement in the general population and for filing suit against the Orange Crush Tactical Team. (Doc. 11, pp. 9, 13).

At some point, Plaintiff put Warden Duncan and the Illinois Department of Corrections ("IDOC") Director "on notice" of his need for protective custody. (Doc. 11, pp. 9, 16). Plaintiff explained that the Orange Crush Tactical Team was "out to hurt him" for filing a lawsuit against them. *Id*. He requested protection from undisclosed officers who threatened him with violence. *Id*. He also asked to be separated from his mentally ill cellmate. *Id*. Plaintiff's request was ignored or denied. (Doc. 11, p. 10).

Plaintiff claims that Officer Clary, Officer Selaby, and Lieutenant Harris continued to retaliate against him in the weeks that followed his attack by Inmate Esther. (Doc. 11, p. 17). As they prepared to take him for his insulin shot on September 28, 2015, Plaintiff complained that his cuffs were too tight and cutting into his wrists. *Id*. The officers responded by slamming Plaintiff "off the walls." *Id*. Officer Selaby told Plaintiff that "that's what you have to pay for coming to jail, tight[ ] cuffs, so you don't get away from us." *Id*. Plaintiff missed his insulin shot during that shift. *Id*. The officers did this each day, until Plaintiff simply asked to skip his insulin shots when they were working. *Id*.

Plaintiff is now housed at Western Illinois, where he claims that prison officials continue to retaliate against him and refuse inmate requests for protective custody. (Doc. 11, p. 3). He offers no specific information in support of these assertions. (Doc. 11). He names no defendants from Western Illinois in this suit, and he brings no claims against them. *Id*.

### Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court

deems it appropriate to organize the claims in the First Amended Complaint into the following enumerated counts:

**Count 1 -** Eighth Amendment deliberate indifference claim against Defendants for failing to intervene and protect Plaintiff from an attack by Inmate Esther on or around September 13, 2015. ("Count I" Doc. 11, pp. 18-21; "Count III," Doc. 11, p. 25).

**Count 2 -** Eighth Amendment deliberate indifference claim against Defendants Clary, Selaby, and Harris for using excessive force against Plaintiff when cuffing him on and after September 28, 2015. (Doc. 11, p. 17).

**Count 3 -** Fourteenth Amendment due process claim against Defendants. ("Count V," Doc. 11, p. 29).

**Count 4 -** Conspiracy claim against Defendants under the common law and/or 42 U.S.C. § 1985. ("Count II," Doc. 11, pp. 22-24).

**Count 5 -** First Amendment retaliation claim against Defendants for placing Plaintiff in a cell with Inmate Esther because Plaintiff refused housing in the general population and/or sued the Orange Crush Tactical Team. ("Count V," Doc. 11, pp. 27-29; "Count VI," Doc. 11, pp. 30-32).

**Count 6 -** First and/or Fourteenth Amendment claim against Defendants for denying Plaintiff access to the courts when they ignored or denied his grievances. ("Count VI," Doc. 11, p. 30).

**Count 7 -** Intentional infliction of emotional distress claim against Defendants ("Count IV," Doc. 11, p. 26).

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding their merits. **Any claims that are not identified above but are encompassed within the First Amended Complaint are considered dismissed without prejudice from this action.**

**Claims Subject to Further Review**

**Count 1**

Prison officials have a duty to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). A claim against a prison official for failing to intervene and protect an inmate consists of an objective and a subjective component. *Farmer*, 511 U.S. at 834; *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). To satisfy the objective component, the plaintiff must demonstrate that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. To satisfy the subjective component, he must demonstrate that the defendants acted with deliberate indifference to his health or safety. *Id*. at 834.

The allegations satisfy the objective component of this claim for screening purposes. Plaintiff was housed with a mentally ill inmate, even after the inmate stopped taking his medication. Inmate Esther had a known propensity for violence and allegedly attacked Plaintiff. *See, e.g., Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005) ("[A] beating suffered at the hands of a fellow detainee . . . clearly constitutes serious harm.").

The subjective component of this claim is satisfied, where the official knew about and disregarded "an excessive risk to inmate health or safety[.]" *Gevas*, 798 F.3d at 480 (quoting *Farmer*, 511 U.S. at 837). A plaintiff must establish that the official had actual knowledge of the risk. *Id*. To satisfy the subjective component of this claim against a supervisor, the plaintiff must demonstrate that the state actor knew about the conduct and "facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what [he] might see." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (quoting *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708

7

(7th Cir. 2012)) (alteration in original). The allegations satisfy these standards against certain defendants.

For example, Plaintiff alleges that he notified Defendants Johnson, Weaver, Maxley, Gipson, and Pots of the threat posed by Inmate Esther on September 12th and 13th. (Doc. 11, p 12). He asked each of them for a crisis team or a cell transfer because of the conflict between the two inmates. *Id*. These defendants refused his direct requests for protection, and he was subsequently assaulted. *Id*. The allegations support a failure to protect claim against them.

Plaintiff goes on to allege that he pressed the emergency call button to alert each of the segregation unit officers of his need for protection during the fifteen hours preceding the attack. (Doc. 11, pp. 13-14). Each time, a segregation unit officer appeared at his cell, looked for signs of a fight, and then left after finding no direct evidence of a fight, such as blood. *Id*. The supervisory officials were allegedly aware of and condoned this practice.[2] *Id*. The allegations suggest that each of the segregation unit officers was involved – either directly or indirectly – in the denial of Plaintiff's request for protective placement. The First Amended Complaint identifies the segregation unit officers as Defendant Austin, Keller, Selaby, Jenning, Freeman, Byford, Clary, Harris, Dallis, and Wheeler, in addition to those defendants already identified in the preceding paragraph. The failure to protect claim shall receive further review against these defendants as well.

The allegations also support a deliberate indifference claim against Warden Duncan, who Plaintiff allegedly notified through an emergency grievance of the harm posed by the prison officials and his mentally ill cellmate. (Doc. 11, pp. 9-10, 16). *See Santiago v. Walls*, 599 F.3d 749, 758-59 (7th Cir. 2010) (concluding that inmate pleaded deliberate indifference by alleging

---

[2] In the First Amended Complaint, Plaintiff refers to this conduct as a "policy of inaction" or a "must see blood policy."

that warden ignored emergency grievance about risk that cellmate posed to inmate). Warden Duncan allegedly ignored Plaintiff's request for protective placement. (Doc. 11, pp. 9-10, 16). Count 1 shall receive further review against Warden Duncan, in his or her individual capacity.

The same cannot be said of the claim against the IDOC Director, who Plaintiff also notified of the threat posed by Inmate Esther. Plaintiff did not identify the IDOC Director as a defendant in the caption of his First Amended Complaint or in his list of defendants. (Doc. 11). When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

For the reasons discussed in more detail below, this claim (and all others) shall be dismissed without prejudice against the remaining defendants, including Defendants Cooper, Bayler, Vaughn, Hough, Hance, Molenhour, Welty, Doe #1, Doe #2, and with prejudice against Defendant Esther.

## Count 2

The intentional use of excessive force by prison officials against an inmate without penological justification also violates the Eighth Amendment's prohibition against cruel and unusual punishment. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). A plaintiff who brings an excessive force claim must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v.*

*McMillian*, 503 U.S. 1, 6 (1992)). This is the "core judicial inquiry" in an excessive force claim. *See Davis v. Wessel*, 792 F.3d 793, 804 (7th Cir. 2015) (citing *Hudson*, 503 U.S. at 6-7).

The allegations in the First Amended Complaint suggest that Defendants Clary, Selaby, and Harris acted maliciously and sadistically to cause Plaintiff harm when they routinely cuffed him so tightly that the cuffs "cut into" his wrists and then slammed him "off the walls" when he complained of the pain. (Doc. 11, p. 17). The excessive force claim shall receive further review against them. Because no other defendants are named in connection with this claim, it shall be dismissed with prejudice against all other defendants.

### Count 4 – Common Law Conspiracy

Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under § 1983). It is generally "enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date. . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). In the First Amended Complaint, Plaintiff alleges that all of the defendants conspired to violate his rights, but his allegations amount to little more than threadbare recitations of the elements of this cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (threadbare recitations of the elements of a cause of action, supported only by conclusory allegations, are insufficient to satisfy the pleading standard set forth under Rule 8 of the Federal Rules of Civil Procedure). Plaintiff does not explain how all twenty-seven defendants agreed or worked together to cause the constitutional deprivations addressed in this suit.

With that said, the common law conspiracy claim overlaps with Counts 1, 2, and 5 against the officers who allegedly retaliated against Plaintiff by placing him in a cell with Inmate

Esther and by uniformly denying his request for protective placement. Each time he requested a cell transfer, the officers appeared at his cell, looked for signs of a fight, and then left when they found none. Under the circumstances presented, the Court will allow the common law conspiracy claim to proceed against the same individuals who are subject to Counts 1, 2, and 5: Defendants Johnson, Weaver, Maxley, Gipson, Pots, Duncan, Austin, Keller, Selaby, Jenning, Freeman, Byford, Clary, Harris, Dallis, and Wheeler.

This claim shall be dismissed against all other defendants. Conspiracy is not an independent basis of liability in § 1983 actions. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). Given that all other claims against the remaining defendants are subject to dismissal, as discussed in more detail below, the common law conspiracy claim is as well.

Accordingly, the common law conspiracy claim in Count 4 shall receive further review against Defendants Johnson, Weaver, Maxley, Gipson, Pots, Duncan, Austin, Keller, Selaby, Jenning, Freeman, Byford, Clary, Harris, Dallis, and Wheeler. This claim shall be dismissed without prejudice against Defendants Cooper, Bayler, Vaughn, Hough, Hance, Molenhour, Welty, Doe #1, and Doe #2, and with prejudice against Defendant Esther for failure to state a claim upon which relief may be granted.

## Count 5

Plaintiff alleges that the defendants retaliated against him because he refused placement in the general population and/or because he sued the Orange Crush Tactical Team. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution."

*DeWalt v. Cater*, 224 F.3d 607, 618 (7th Cir. 2000). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). In order to state a retaliation claim under the First Amendment, a plaintiff must demonstrate that:  "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor" behind the retaliatory action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

The first element of this claim is satisfied for screening purposes. Plaintiff's decision to file a lawsuit against the Orange Crush Tactical Team is protected activity. *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005). His decision to refuse placement in the general population does not trigger First Amendment protection. Because Plaintiff alleges that the defendants retaliated against him for both reasons, however, he has satisfied the first element of this claim against all of the defendants.

The question becomes whether Plaintiff suffered a deprivation likely to deter protected activity. Plaintiff points to two separate deprivations of his Eighth Amendment rights in Counts 1 and 2. However, the deprivation necessary to support a retaliation claim does not have to be of constitutional proportions. The defendants could take some other adverse action against Plaintiff to deter his protected activity. In the First Amended Complaint, Plaintiff describes no other adverse action with sufficient detail to support a retaliation claim against the remaining defendants. The second element of this claim is therefore satisfied, for screening purposes, only against the defendants named in connection with Counts 1 and 2:  Defendants Johnson, Weaver, Maxley, Gipson, Pots, Duncan, Austin, Keller, Selaby, Jenning, Freeman, Byford, Clary, Harris, Dallis, and Wheeler.

Finally, Plaintiff alleges that all of these defendants were motivated by his protected activity (*i.e.* his decision to file suit against the Orange Crush Tactical Team).

The First Amended Complaint articulates a colorable retaliation claim at screening against Defendants Johnson, Weaver, Maxley, Gipson, Pots, Duncan, Austin, Keller, Selaby, Jenning, Freeman, Byford, Clary, Harris, Dallis, and Wheeler. Count 5 shall be dismissed without prejudice against Defendants Cooper, Bayler, Vaughn, Hough, Hance, Molenhour, Welty, Doe #1, and Doe #2, and with prejudice against Inmate Esther for failure to state a claim upon which relief may be granted.

## Claims Subject to Dismissal

### Count 3

Plaintiff refers to a Fourteenth Amendment due process claim arising from the deprivation of a protected liberty interest. (Doc. 11, p. 29). He provided no context for this claim, and it is unclear what conduct Plaintiff is actually challenging. (Doc. 11). The claim is undeveloped and subject to dismissal under *Twombly* for failure to state a plausible claim. *See Twombly*, 550 U.S. at 570 (plaintiff must plead "enough facts to state a claim to relief that is plausible on its face.").

Assuming that Plaintiff is challenging the denial of his request for a cell transfer, the amended complaint still supports no due process claim against any of the defendants. Prisoners have no protected liberty interest in being housed at a particular prison or in a particular cell. *Sousa v. Anglin*, 481 F. App'x 265, 267 (7th Cir. 2012) (citing *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005)). Even if he was transferred into segregation for disciplinary reasons, "[d]isciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not

actionable under the due process clause." *Sousa*, 481 F. App'x at 267 (quoting *Miller v. Dobier*, 634 F.3d 412, 414-15 (7th Cir. 2011)). Plaintiff does not complain about the conditions of his confinement at all, but rather the cellmate he was assigned. No due process claim arises from the denial of Plaintiff's cell transfer request. Count 3 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## Count 4 - § 1985 Conspiracy

In addition to a common law conspiracy claim, Plaintiff asserts a claim of conspiracy pursuant to 42 U.S.C. § 1985 against the defendants. A § 1985 conspiracy "cannot exist solely between members of the same entity." *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). Plaintiff brings this claim against IDOC employees, all of whom were working in the IDOC's interest at the time of the events giving rise to this action. The defendants cannot be sued for conspiracy under § 1985. *See id. See also Wright v. Ill. Dep't of Children and Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994).[3] The § 1985 conspiracy claim in Count 4 shall therefore be dismissed with prejudice against all of the defendants for failure to state a claim upon which relief may be granted.

## Count 6

No claim arises under the Fourteenth Amendment Due Process Clause for the mishandling of grievances, where a prison official "otherwise did not cause or participate in the underlying conduct." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*

---

[3] While *Wright* focused on corporate managers, nothing in its reasoning precludes application of this doctrine to supervisors and subordinates in a government entity, as long as all are working in the entity's interest. *Id.* at 633.

*v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). The Fourteenth Amendment claim against the defendants for ignoring, denying, or delaying Plaintiff's grievances does not survive screening.

No claim for the denial of court access arises under the First Amendment either. This is because mishandling grievances, without more, does not preclude a prisoner from filing suit. The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a suit in federal court. 42 U.S.C. § 1997e(a). When a prison official fails to respond to a prisoner's grievances, the administrative remedies are considered unavailable under the PLRA. *Lewis*, 300 F.3d at 833 (citations omitted). A prisoner who can demonstrate that administrative remedies are unavailable is free to proceed with his or her suit. *Id*. The mishandling of Plaintiff's grievances gives rise to no First Amendment claim.

Accordingly, Count 6 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## Count 7

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). Plaintiff's claim for intentional infliction of emotional distress arises from the same set of facts as his federal constitutional claims and is therefore subject to this Court's supplemental jurisdiction.

In order to state a claim for intentional infliction of emotional distress under Illinois law, a plaintiff must demonstrate that the defendants intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citations omitted). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

The allegations in the First Amended Complaint support no claim for intentional infliction of emotional distress against the defendants. Plaintiff includes no allegations which suggest that the defendants' conduct was truly extreme or outrageous, that it was intended to cause Plaintiff distress, or that Plaintiff actually suffered from severe emotional distress as a result. Like several other claims in the First Amended Complaint, the allegations offered in support of this state law claim amount to threadbare recitals of this cause of action. Count 7 shall be dismissed without prejudice against all of the defendants.

### Western Illinois Claims

In the First Amended Complaint, Plaintiff vaguely alludes to violations of his constitutional rights by officials at Western Illinois. (Doc. 11, p. 1). He names no defendants

from Western Illinois in the case caption, however, and he offers no factual allegations in support of this allegation and does not assert any claims against Western Illinois officials in the body of his amended complaint. (Doc. 11). All claims arising at Western Illinois are therefore considered dismissed without prejudice from this action for failure to state a claim upon which relief may be granted. Further, the Court notes that Western Illinois is situated in the federal judicial district for the Central District of Illinois. Any separate civil rights action that Plaintiff intends to file in connection with his current confinement at Western Illinois should be brought, if at all, in the United States District Court for the Central District of Illinois – Springfield Division.

## Parties Subject to Dismissal

### Inmate Esther

Plaintiff's former cellmate, Inmate Esther, is not subject to suit under 42 U.S.C. § 1983. "Section 1983 creates a federal remedy against anyone who, under color of state law, deprives 'any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws.'" *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012) (quoting 42 U.S.C. § 1983). No allegations suggest that this inmate was acting "under color of state law" when he attacked Plaintiff on September 13, 2015. Plaintiff also asserts no claims in the amended complaint against him. Therefore, Inmate Esther shall be dismissed with prejudice from this action, but without prejudice to any other suit Plaintiff wishes to file against him.


### Cooper, Bayler, Vaughn, Hough, Hance, Molenhour, Welty, Doe #1, and Doe #2

Plaintiff identifies each of the above-listed individuals as a defendant in the case caption of his First Amended Complaint. Unfortunately, however, he does not mention them in his more detailed list of defendants. (Doc. 11, pp. 3-7). If Plaintiff had included a short and plain statement of his claim against each defendant, it would not matter that he failed to describe them in any detail in his list of defendants. *See* FED. R. CIV. P. 8(a)(2). *See also Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"). But Plaintiff failed to do either in the First Amended Complaint. The Court is unable to determine whether these defendants were even employed at Lawrence during the relevant time period or what role each played in a particular constitutional violation.

Plaintiff instead refers to amorphous groups of defendants, without identifying who is in each group. When he does mention these defendants by name, Plaintiff vaguely states that they were "involved" in the events described in the amended complaint without explaining how they were involved. And, given that the amended complaint refers to numerous incidents, many of which give rise to no claims or offer only background information, the Court has no way of determining whether these defendants were actually "involved" in a constitutional deprivation.

Where a plaintiff does not include a defendant in his statement of the claim or refers to the defendant as part of an amorphous group, as here, that defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him or her. As this Court has often said, merely invoking the name of a potential defendant is not enough to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the

caption."). The allegations against each of these defendants are undeveloped and fail to state any claim for relief. Accordingly, Defendants Cooper, Bayler, Vaughn, Hough, Hance, Molenhour, Welty, Doe 1, and Doe 2 shall be dismissed without prejudice from this action.

## Injunctive Relief

Plaintiff seeks injunctive relief, in the form of an order requiring prison officials to grant inmate requests for protective custody before harm occurs. (Doc. 11, pp. 21, 33). Plaintiff's amended complaint focuses on the denial of protective custody at Lawrence on September 13, 2015. He refers to no other situations in which he, or anyone else, was denied protective custody. Although Plaintiff alludes to continuing problems at Western Illinois, he asserts no claims against prison officials there. His transfer from Lawrence long before he filed this action appears to moot any request for injunctive relief that is tied to that facility, unless Plaintiff can demonstrate that there is a reasonable likelihood of returning to the same conditions. *See, e.g., Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Against this backdrop, the Court shall leave for another day, and a more complete record, the question of whether this request for relief is moot.[4] *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)). Warden Duncan, who is already named in this action in his or her individual capacity, shall also be named in an official capacity for purposes of responding to this request for relief. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

---

[4] Plaintiff refers to "preliminary and other injunctive relief" a single time in his amended complaint. (Doc. 11, p. 1). He does not explain why, and he did not file a motion seeking a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. If Plaintiff believes such relief is warranted, he may file a separate motion at any time while this action is pending.

## Pending Motion

Plaintiff filed a Motion for Recruitment of Counsel (Doc. 3), which shall be **REFERRED** to a United States Magistrate Judge for a decision.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1, 4 (common law claim),** and **5** survive screening and are subject to further review against Defendants **JOHNSON, WEAVER, MAXLEY, GIPSON, POTS, DUNCAN, AUSTIN, KELLER, SELABY, JENNING, FREEMAN, BYFORD, CLARY, HARRIS, DALLIS,** and **WHEELER**. These claims are **DISMISSED** with prejudice against Defendant Esther and without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 2** survives screening and is subject to further review against Defendants **CLARY, SELABY,** and **HARRIS.** This claim is **DISMISSED** with prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNTS 3, 4 (§ 1985 claim),** and **6** are **DISMISSED** with prejudice and **COUNT 7** is **DISMISSED** without prejudice, all for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Defendant **ESTHER** is **DISMISSED** with prejudice and Defendants **COOPER, BAYLER, VAUGHN, HOUGH, HANCE, MOLENHOUR, WELTY, DOE #1,** and **DOE #2** are **DISMISSED** without prejudice because the amended complaint fails to state a claim for relief against these defendants.

With respect to **COUNTS 1, 2, 4 (common law claim),** and **5**, the Clerk of Court shall prepare for Defendants **JOHNSON, WEAVER, MAXLEY, GIPSON, POTS, AUSTIN,**

**KELLER, SELABY, JENNING, FREEMAN, BYFORD, CLARY, HARRIS, DALLIS, WHEELER,** and **DUNCAN (in his or her individual and official capacities)**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 11) and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant and the Court will require Defendant to pay the full costs of formal service to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on the Motion for Recruitment of Counsel (Doc. 3).

Further, this entire matter is hereby **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c),

*should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  October 2, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**