IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES SULTAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3: 17-CV-418-NJR-MAB |
| ) | |
| STEPHEN DUNCAN, LISA TARR, ) | |
| BRIAN KELLER, ZACHARY MAXEY, ) | |
| ROBERT WEAVER, CHRISTOPHER ) | |
| GIPSON, DARRELL SELBY, CHAD ) | |
| JENNINGS, JASON FREEMAN, ) | |
| PATRICIA POTTS, WILLIAM ) | |
| BYFORD, KEVIN JOHNSON, ETHAN ) | |
| CLARY, DON HARRIS, ALLAN ) | |
| DALLAS, and NATHAN WHEELER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Currently pending before the Court is Defendant Patricia Potts' motion for summary judgment on the issue of exhaustion (Doc. 117). For the reasons stated below, the motion is granted.

### BACKGROUND

Plaintiff Charles Sultan ("Plaintiff") brought this action pursuant to 42 U.S.C. §1983 alleging various deprivations of his constitutional rights that occurred while he was incarcerated at Lawrence Correctional Center (Doc. 11; Doc. 13). In particular, Plaintiff alleged that officials at Lawrence placed him in a segregation cell with an inmate who was mentally ill and had a known propensity for violence. According to Plaintiff, this cell assignment was in retaliation for a lawsuit he previously filed against the Orange

Crush Tactical Team. Plaintiff's cellmate became angry with him, and Plaintiff asked multiple officers to move him to another cell or get him a crisis team because of "a conflict" with his cellmate, but they refused. He also asked Defendant Potts, a nurse at Lawrence, to get him a crisis team, but she also refused. On the evening of September 13, 2015, after Plaintiff had been trying for two days to get help, Plaintiff was assaulted by his cellmate (Doc. 13).

Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following counts:

> **Count 1 -** Eighth Amendment deliberate indifference claim against Defendants William Byford, Ethan Clary, Allan Dallas, Stephen Duncan, Jason Freeman, Christopher Gipson, Don Harris, Kevin Johnson, Chad Jennings, Brian Keller, Zachary Maxey, Patricia Pots, Darrell Selby, Lisa Tarr, Robert Weaver, and Nathan Wheeler for failing to intervene and protect Plaintiff from an attack by Inmate Esther on or around September 13, 2015.[1]
>
> **Count 2** - Eighth Amendment deliberate indifference claim against Defendants Clary, Selby, and Harris for using excessive force against Plaintiff when cuffing him on and after September 28, 2015.
>
> **Count 4 -** Conspiracy claim against all Defendants under the common law and/or 42 U.S.C. § 1985.
>
> **Count 5 -** First Amendment retaliation claim against all Defendants for placing Plaintiff in a cell with Inmate Esther because Plaintiff sued the Orange Crush Tactical Team.

(Doc. 13).

---

[1] The threshold order also lists a Defendant named Austin, however, Lisa Tarr was later substituted in for Defendant Austin (Doc. 73).

Nurse Potts is the only Defendant who filed a motion for summary judgment on the issue of exhaustion (Doc. 117). She argues that Plaintiff failed to reference her by name or description in any of his grievances (Doc. 118, p. 9). His grievances instead focus exclusively on the conduct of correctional officers (*Id.* at p. 10). Plaintiff, through appointed counsel, filed a response in opposition to Nurse Potts' motion (Doc. 138). Nurse Potts then filed a reply to Plaintiff's response (Doc. 141). An evidentiary hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was not required based on the record and the parties' briefs.

## **LEGAL STANDARDS**

*Summary Judgment*

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing there is a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Normally, the court cannot resolve factual disputes on a motion for summary judgment; they must be decided by a jury. *E.g.*, *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A] trial is the standard means of resolving factual disputes . . . .") The opposite is true, however, when the motion for summary judgment pertains to a prisoner's failure to exhaust. The Seventh Circuit has instructed courts to conduct an evidentiary hearing in order to resolve contested issues of fact regarding a prisoner's purported failure to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts*, 745 F.3d at 234. Here, the parties' briefs demonstrate that there are no contested issues of fact and so a hearing is not required.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). The purpose of the exhaustion requirement is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam) (citations omitted). *See also Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at

903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2015).[2] Pertinent to this case is the regulation regarding emergency procedures. 20 ILL. ADMIN. CODE § 504.840 (2015). Under § 504.840, a prisoner can request a grievance be handled on an emergency basis by forwarding the grievance directly to the warden. *Id.* The warden then reviews the grievance to determine if it is truly an emergency. *See Id.* If the warden determines there is "a substantial risk of imminent personal injury or other serious or irreparable harm," the warden will process and respond to the grievance on an expedited basis. *Id.* If the prisoner is unsatisfied with the warden's expedited decision, he can appeal to the ARB for a final determination from the Director of the IDOC. *Id.* at 504.850(a), (g) ("In those instances where an offender is appealing a grievance determined by the [warden] to be of an emergency nature, the ARB shall expedite processing of the grievance.").

On the other hand, if the warden determines that the grievance is not based on an emergency, the regulation does not indicate how things are supposed to proceed. *See* 20 ILL. ADMIN. CODE §§ 504.840, 504.850 (2015). The Seventh Circuit held in an unpublished

---

[2] Illinois amended its grievance procedures, effective April 1, 2017. *See* 41 Ill. Reg. 3909–10 (March 31, 2017) (amending 20 Ill. Admin. Code § 504.810). However, the grievances at issue here were written in 2015, well before the amended grievance procedures took effect. Consequently, the previous version of the grievance procedures—the one that was in effect from April 2003 to April 2017—applies here. *See* 27 Ill. Reg. 6285–86 (April 11, 2003) (promulgating the version of 20 Ill. Admin. Code § 504.810 in effect from April 2003 to April 2017). That is the version cited and referred to throughout this Order.

case that "after the warden concludes that the grievance does not present an emergency . . . Illinois rules do not require [the prisoner] to appeal that decision to the [ARB]." 718 Fed. Appx. 413, 418 (7th Cir. 2017) (unpublished). *See also Boyce v. Illinois Dep't of Corr.*, 661 Fed. Appx. 441, 443 (7th Cir. 2016) (noting that prisoner "submitted grievances directly to the warden as emergencies, and our decision in *Thornton v. Snyder* implies that this may have been enough."). Judges in this district have elected to follow the holding in *Bentz*. *E.g., Cox v. Lashbrook*, No. 16-CV-1096-NJR-DGW, 2018 WL 4520272, at *4 (S.D. Ill. Sept. 21, 2018); *Viverette v. Wexford Health Sources Inc.*, No. 17-CV-586-JPG-DGW, 2018 WL 3526501, at *4 (S.D. Ill. July 23, 2018).

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Nurse Potts provided the Court with a select portion of Plaintiff's grievance records from the Administrative Review Board and Western Correctional Center, as well as a cumulative counseling summary from Western (Docs. 118-1, 118-2, 118-3). Nurse Potts highlighted six potentially relevant grievances dated July 28, 2015; September 28, 2018; October 6, 2015; October 8 (maybe 18), 2015; November 18, 2015; and December 14, 2015 (Doc. 118, pp. 2–3). She argued that none of these grievances contain any reference whatsoever to her, and therefore they are insufficient to exhaust as to her (Doc. 118). After reviewing these grievances, the Court also agrees that these grievances are insufficient to exhaust as to Nurse Potts.

To begin with, the grievance dated November 18, 2015 concerns medical care that Plaintiff received at Western Correctional Center (Doc. 118-1, pp. 19–20). It is wholly unrelated to the claims in this case and therefore cannot exhaust as to Nurse Potts.

The other five grievances—July 28, September 28, October 6, October 8 (maybe 18), and December 14, 2015—make clear that Plaintiff was only complaining about purported misdeeds by correctional officers. There is no indication in any of these grievances that Plaintiff was complaining about a nurse or anyone else on the healthcare staff harassing him, threatening him, or otherwise retaliating against him in any way for his ongoing lawsuit against the Orange Crush.

Illinois law specifies that a prisoner's grievances must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(b) (2015). If the offender does not know the names of individual, he "must include as much descriptive information about the individual as possible." *Id.* The grievance forms used by Plaintiff likewise asked for "a description of what happened, when and where it happened, and the name or identifying information for each person involved" (*see* Doc. 118-1). In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (explaining "fatal defect" in grievance was "the absence of anything in it to indicate that [the defendant] was the target."); *see also Ward v. Hoffman*, 670 Fed. Appx. 408, 410 (7th Cir. 2016) (affirming summary judgment based on prisoner's failure to exhaust where he complained only about the procedures used by the adjustment committee and did not mention excessive force or the defendants); *Ambrose v. Godinez*, 510 Fed. Appx. 470, 472 (7th Cir. 2013) (affirming the dismissal of prison officials where

the plaintiff's grievance failed to mention the officials by name or otherwise implicate them in the alleged constitutional violation).

Here, in the July 28, 2015 emergency grievance, Plaintiff alleges he was put into segregation on investigative status but not given any explanation. When officers tried to take him back to general population, Plaintiff refused out of fear that officers involved in his lawsuit against the Orange Crush were "gunning for having me hit. . . ." and were going to "have [him] set-up and have one of the inmates with mental illness . . . do it for them." Plaintiff indicates that he feared for his life at Lawrence and begged to be placed in protective custody.

The emergency grievance dated September 28, 2015 explicitly states that it is about officers Clary, Ethan, Selaby, and Harris harassing Plaintiff and using excessive force against him, amongst other things, all in retaliation because Plaintiff filed a lawsuit.

In the emergency grievances dated October 6 and October 8, 2015, Plaintiff contests the proceedings at the Adjustment Committee hearing on September 23, 2015 for a disciplinary ticket that he received after his cellmate assaulted him. He asks to have the ticket expunged from his record and to be transferred out of Lawrence.

The emergency grievance dated December 14, 2015 was submitted after Plaintiff was transferred to Western Correctional Center. It is substantially the same as the September 28, 2015 grievance discussed above in that Plaintiff complains about officers Clary, Ethan, Selaby, and Harris harassing him and using excessive force against him, amongst other things, all in retaliation for filing a lawsuit.

Because these grievances clearly focus on the actions of correctional officers and none of them even remotely suggest that members of the healthcare staff were also involved in the misdeeds or somehow at fault, they cannot serve to exhaust Plaintiff's claims against Nurse Potts.

The six grievances highlighted by Nurse Potts are not the end of the story, however. In his response to the motion for summary judgment, Plaintiff claims he filed another grievance on September 23, 2015 (Doc. 138). This grievance, which was attached to Plaintiff's amended complaint, was marked as an emergency (Doc. 11-1, pp. 13–15, 30). In the grievance, Plaintiff describes a conflict with his cellmate in segregation. Plaintiff indicates he began notifying officers of the conflict on the night of September 12, 2015 and continued notifying other officers the next day. He further indicates that on September 13th, he was taken to the medication line where he asked "Nurse (Jane Doe #1)" to put him in a crisis cell, but the nurse told him she did not have time to do it right then because she had other stuff to do, but she would come back later with the zone lieutenant to do a crisis move. The nurse, however, never followed through.

The unknown nurse referred to in the September 23rd grievance very well could be Nurse Potts. However, there is no evidence that Plaintiff *ever filed* this grievance, let alone exhausted it. For example, there is no indication on the face of the grievance the warden ever received it or determined whether it constituted an emergency (*see* Doc. 11-1, pp. 13–15, 30). There is also no indication on the face of the grievance that it was ever received by Plaintiff's counselor, the grievance office, or the ARB (*see id.*). There is also no record of this grievance in the materials submitted by Nurse Potts (*see* Docs. 118-1, 118-2,

118-3). Furthermore, Plaintiff also did not provide a declaration asserting that he submitted this grievance, that he did not understand how to do so, or that he was thwarted from doing so by prison officials; there is also no argument to this effect in his response brief (*see* Doc. 138). *See Ross v. Blake*, 136 S. Ct. 1850, 1860, 195 L. Ed. 2d 117 (2016) (explaining that grievance process is unavailable and exhaustion is not required when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."); *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018) (holding that grievance process is "available only if a prisoner has been notified of [its] existence" and the process has been "communicated in a way reasonably likely to be understood.").

In short, Plaintiff failed to provide the Court with any evidence to support his suggestion that he filed and fully exhausted the September 23, 2015, and therefore failed to show a genuine issue of fact existed as to whether he exhausted his administrative remedies with respect to Nurse Potts. Consequently, Nurse Potts is entitled to summary judgment.

## Conclusion

The motion for summary judgment on the issue of exhaustion filed by Defendant Patricia Potts (Doc. 117) is **GRANTED.** Potts is **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

**DATED: February 11, 2020**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**